1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

ANTONIO V. MURO,

                              Plaintiff,

    v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                              Defendant.

3:16-cv-0090-MMD-VPC

**REPORT AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE**

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is plaintiff's motion for remand or reversal (ECF No. 12), defendant's cross-motion to affirm (ECF No. 18), and plaintiff's reply (ECF No. 19). For the reasons set forth herein, the court recommends that plaintiff's motion be denied, and defendant's cross-motion be granted.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In December of 2002, Antonio Muro ("plaintiff") was found disabled as of April 9, 2002. (Administrative Record ("AR") 13, 52). On February 5, 2013, it was determined that plaintiff was no longer disabled. (*Id.* at 58.) On February 11, 2013, plaintiff filed a timely request for reconsideration and on October 9, 2013 attended a disability hearing held before a State Disability Hearing Officer who upheld the determination. (*Id.* at 56, 77–82.) Plaintiff then filed a timely request for hearing before an Administrative Law Judge. (*Id.* at 90.)

On April 14, 2014, plaintiff appeared at a hearing before Administrative Law Judge ("ALJ") Wynne O'Brien-Persons. (*Id.* at 29–48.) Judith Najarian, a vocational expert ("VE"), also appeared at the hearing. (*Id.*) The ALJ issued a written decision on June 2, 2014, finding that plaintiff's disability ended as of February 5, 2013. (*Id.* at 13–22.) Plaintiff appealed, and the

1   Appeals Council denied review on January 20, 2016.  (*Id.* at 1–5.)  Accordingly, the ALJ's

2   decision became the final decision of the Commissioner ("defendant").

3   Having exhausted all administrative remedies, plaintiff filed a complaint for judicial

4   review on February 23, 2016.  (ECF No. 1.)  In his motion for remand or reversal, plaintiff

5   contends that the ALJ erred by (1) failing to consider medical opinion evidence, (2) improperly

6   rejecting plaintiff's testimony, and (3) improperly rejecting the opinion of plaintiff's primary care

7   provider.  (ECF No. 12.)

8   ## II.      STANDARD OF REVIEW

9   This court has jurisdiction to review an ALJ's decision to deny a claim for benefits after

10   the claimant has exhausted all administrative remedies.  *See Brewes v. Comm'r of Soc. Sec.*

11   *Admin.*, 682 F.3d 1157, 1161–62 (9th Cir. 2012).  The court must affirm the ALJ's decision

12   unless it rests on legal error or is unsupported by substantial evidence in the administrative

13   record.  *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014); *see also* 42 U.S.C. § 405(g)

14   ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial

15   evidence, shall be conclusive.").  The substantial evidence standard is not onerous.  It is "more

16   than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable

17   mind might accept as adequate to support a conclusion." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th

18   Cir. 2012) (internal quotation omitted).

19   Although the ALJ need not discuss every piece of evidence in the record, she cannot

20   ignore or omit evidence that is significant or probative.  *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th

21   Cir. 2012).  The ALJ's discussion must adequately explain the decision in light of such evidence.

22   "The ALJ, not the district court, is required to provide specific reasons for rejecting [the

23   evidence.]" *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (specifically

24   discussing rejection of lay testimony).  The district court's review is thus constrained to the

25   reasons asserted by the ALJ.  *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

26   To determine whether substantial evidence exists, the court must look at the record as a

27   whole, considering both evidence that supports and undermines the ALJ's decision; it "may not

28   affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec.*

1  *Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotation omitted).  Where "the evidence is

2  susceptible of more than one rational interpretation, the decision of the ALJ must be upheld."

3  *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (internal quotation omitted).  The ALJ alone is

4  responsible for determining credibility and resolving ambiguities.  *Garrison*, 759 F.3d at 1010.

## III.    DISCUSSION

6      To determine whether a claimant continues to be disabled, the Commissioner follows an

7  eight-step sequential process.  20 C.F.R. § 404.1594.  Step one directs the ALJ to determine

8  whether the claimant is engaged in "substantial gainful activity."  20 C.F.R. § 404.1594(f)(1).  If

9  the claimant is performing substantial gainful activity and any applicable trial work period has

10  been completed, the claimant is no longer disabled and the Commissioner denies the claim.  *Id.*

11      The second step requires the ALJ to determine whether the claimant has an impairment or

12  combination of impairments that meet or medically equal the severity of an impairment listed in

13  the Social Security Regulations at 20 C.F.R. Pt. 404, Subpart P, Appendix 1.  *Id.* §§

14  404.1594(f)(2).  The list in Appendix 1 "define[s] impairments that would prevent an adult,

15  regardless of his [or her] age, education, or work experience, from performing *any* gainful

16  activity, not just substantial gainful activity."  *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)

17  (internal quotation omitted) (emphasis in original).  Where the claimant's impairment is on the

18  list, or is equivalent to a listed impairment, and the claimant also meets the corresponding

19  durational requirement, the claimant's disability continues.   20 C.F.R. § 404.1594(f)(2).

20  However, for an impairment to match a listing, "it must meet *all* of the specified medical criteria.

21  An impairment that manifests only some of those criteria, no matter how severely, does not

22  qualify."  *Zebley*, 493 U.S. at 530 (emphasis in original).

23       If the Commissioner does not find a continuing disability at step two, review of the claim

24  proceeds to step three.  There, the ALJ considers whether there has been medical improvement.

25  20 C.F.R. § 404.1594(f)(3).  Medical improvement is any decrease in medical severity of the

26  impairment(s) as established by improvement in symptoms, signs, and/or laboratory findings.  *Id.*

27  § 404.1594(b)(1).  If medical improvement has occurred, the analysis proceeds to the fourth step;

28  if not, the analysis proceeds to the fifth step.  *Id.* § 404.1594(f)(3).

In making the step four determination, the ALJ determines whether medical improvement is related to the ability to work. *Id.* § 404.1594(f)(4). That is, to determine whether or not there has been an increase in the residual functional capacity ("RFC") based on the impairment(s) that was present at the time of the most recent favorable medical determination. *Id.* § 404.1594(b)(1-4). If medical improvement is not related to the claimant's ability to do work, the analysis proceeds to step five; if it is related, the analysis moves to step six. *Id.* § 404.1594(f)(4).

At step five, the ALJ determines whether any exceptions to medical improvement applies. *Id.* § 404.1594(f)(5). There are two groups of exceptions. *See id.* §§ 404.1594(d), 404.1594(e). If one of the first group exceptions applies, the analysis proceeds to step six. *Id.* § 404.1594(f)(5). If one of the second group exceptions applies, the claimant's disability will be found to have ended. *Id.* If none apply, the claimant's disability continues. *Id.*

At step six, the ALJ determines whether all the claimant's current impairments in combination are severe. *Id.* § 404.1594(f)(6). If all current impairments in combination do not significantly limit the claimant's ability to do basic work activities, the claimant is no longer disabled; if they do, the analysis proceeds to step seven. *Id.*

In making the seventh step determination, the ALJ assesses the claimant's RFC based on the current impairments and determines if he or she can perform past relevant work. *Id.* § 404.1594(f)(7). If the claimant has the capacity to perform past relevant work, the disability has ended; if not, the analysis moves to the final step. The ALJ will find that the claimant can return to past relevant work if he or she can perform the "actual functional demands and job duties of a particular past relevant job" or the "functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation omitted).

At the final step, the burden shifts to the Commissioner to establish that the claimant can perform jobs available in the national economy. 20 C.F.R. § 404.1594(f)(8). There, the ALJ must consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Id.*; *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007). If the ALJ establishes that the claimant's

4

RFC and transferable skills allow him or her to perform other occupations, the claimant is no longer disabled.  20 C.F.R. § 404.1594(f)(8).  Conversely, if the ALJ concludes that the claimant cannot perform any other work, the claimant's disability continues.  *Id.*

**B.    The ALJ followed the eight-step process and concluded that plaintiff's disability ended on February 5, 2013.**

The ALJ indicated that she was presented with the issue of whether plaintiff's disability ended under 223(f) of the Social Security Act (42 U.S.C. § 423(f)).  (AR 13.)  Upon reviewing the evidence, the ALJ determined that plaintiff's disability had ended as of February 5, 2013.  (AR 13.)

The ALJ found that the most recent favorable medical decision finding plaintiff disabled is dated December 5, 2002, and is known as the "comparison point decision" ("CPD").  (AR 14.)  The ALJ concluded that plaintiff did not engage in substantial gainful activity through the date the ALJ found plaintiff's disability ended, February 5, 2013.  (AR 15.)

The ALJ found plaintiff has the following severe impairments: degenerative disc disease of the lumbar and cervical spine; obesity; depression; chronic pain; and personality disorder.  (AR 15.)  The ALJ concluded that these medical impairments are the same as or are related to the impairments plaintiff had when he was originally found to be disabled.  (AR 15.)  The ALJ referenced a diagnosis of hypertension and history of urinary incontinence in the record, but stated that the evidence did not support that these conditions, either singly or in combination, caused more than minimal functional limitations.  (AR 15.)  The ALJ also found plaintiff's history of concussion to be a non-medically determinable impairment, as plaintiff exhibited normal memory, only mildly decreased attention span and concentration, normal language, and normal fund of knowledge. (AR 15.)  Additionally, plaintiff's treating neurologist, J. Ivan Lopez, M.D., could not find anything objective in plaintiff's exam that was consistent with his history. (AR 15.)  The ALJ determined that since February 5, 2013, plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Pt. 404, Subpart P, Appendix 1.  (AR 15.)

1    The ALJ concluded that medical improvement occurred as of February 5, 2013.  (AR 17.)

2    The ALJ found that as of February 5, 2013, plaintiff had the RFC to perform sedentary work as

3    defined in 20 C.F.R. 404.1567(a), except he: would need to briefly alternate positions every hour;

4    could never crawl or climb ladders, ropes, or scaffolds; could occasionally perform bilateral

5    overhead reaching and frequently perform bilateral reaching in all other direction; could never

6    perform repetitive rotation, flexion, or extension of the neck; could perform frequent left-sided

7    gross manipulation; should avoid concentrated exposure to excessive vibration; should avoid

8    moderate exposure to hazards; and would be off-task 5% of the workday due to mental health

9    symptoms, pain medication, and pain.  (AR 17.)

10    The ALJ noted plaintiff's claim of left-side face numbness and left hand numbness and

11    pain, but found that despite these allegations, he was able to take his son to school, visit with

12    family, prepare meals, perform dusting, drive a car, go out shopping, and go to son's sports

13    games.  (AR 18, citing Exhibit 10E/1-8.)  As such, the ALJ concluded that plaintiff's statements

14    concerning the intensity, persistence, and limiting effects of these symptoms were not credible to

15    the extend inconsistent with the RFC assessment.  (AR 18, 20.)  In addition, the ALJ found that

16    the objective medical evidence failed to provide strong support for plaintiff's allegations of

17    disabling symptoms and limitations.  (AR 18.)  The ALJ cited several reasons as the basis for the

18    adverse credibility finding, including inconsistency with plaintiff's reported daily activities,

19    repeated reports of improving mental health, and conservative treatment used to treat plaintiff's

20    musculoskeletal complaints.  (AR 18-21.)

21    The ALJ stated that based on this RFC, plaintiff could not perform past relevant work, but

22    that the VE testified that an individual with the same age, education, and work experience as

23    plaintiff could work in a representative occupation, such as an order or charge clerk, DOT

24    209.567-014, 205.367-014, which has a sedentary level of exertion and skill level of SVP 2.  (AR

25    21-22.)  Based on the VE's testimony, the ALJ concluded plaintiff is capable of performing

26    representative occupations such as an order or charge clerk.  (AR 22.)  As a result, the ALJ

27    concluded plaintiff's disability ended as of February 5, 2013.  (AR 22.)

28

1    **C.    If the ALJ's erred in rejecting Dr. Barton's opinion, that error was harmless.**

2         Plaintiff first argues that the ALJ failed to properly consider the medical opinion of Dr.

3    Eitne-Marie Barton, DO.  (ECF No. 12 at 8–9.)  Specifically, that the ALJ failed to evaluate a

4    statement from Dr. Barton that plaintiff is unable to walk more than 200 feet and is severely

5    limited in his ability to walk.  (*Id.* at 8.)  Plaintiff contends that the ALJ's failure to mention Dr.

6    Barton's opinion in her decision constitutes legal error.  (*Id.* at 9.)

7         Defendant argues that the ALJ was not required to give special significance to the

8    Department of Motor Vehicles ("DMV") Disabled Placards Application completed by Dr. Barton,

9    as it was not a medical opinion.  (ECF No. 18 at 6–7.)  Medical opinions are "statements from

10   physicians and psychologists or other acceptable medical sources that reflect judgments about the

11   nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms,

12   diagnosis and prognosis, what [the claimant] can still do despite the impairment(s), and [the

13   claimant's] physical or mental restrictions."  20 C.F.R.§ 404.1527(a)(2).

14        The court is skeptical that this check-box DMV application constitutes a medical opinion.

15   The application does not include any statements from Dr. Barton regarding her judgment about

16   the plaintiff's limitations.  Instead, the application consists of two checked boxes indicating

17   plaintiff "[c]annot walk two hundred feet without stopping to rest" and he "[i]s severally limited

18   in his/her ability to walk because of an arthritic, neurological, or orthopedic condition," signed by

19   Dr. Barton.  (AR 630.)  There is no other mention of Dr. Barton in the entire administrative

20   record, and as such, there is no other evidence supporting such a limitation.  Further, plaintiff

21   points to no authority, and the court finds no such authority, stating that a DMV application is a

22   medical opinion.

23        Given the above, even if the DMV application is considered to be a medical opinion, any

24   error in rejecting it is harmless.  Contrary findings within physicians' opinions, a lack of medical

25   treatment for alleged medical impairments, and plaintiff's ability to perform at a higher functional

26   level are specific and legitimate reasons to reject Dr. Barton's opinion regarding walking

27   limitations.  Thus, because the ALJ's error "was 'inconsequential to the ultimate nondisability

28   determination' in the context of the record as a whole," remand based on a failure to explicitly

1    reject the limitations is not warranted.  *See Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012)

2    (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

3    **D.    The ALJ permissibly discounted plaintiff's subjective testimony.**

4         Next, plaintiff argues that the ALJ erred by improperly rejecting plaintiff's testimony of

5    his limitations.  (ECF No. 12 at 9–10.)  Specifically, plaintiff argues that the ALJ failed to make

6    specific findings about plaintiff's complaints and that substantial evidence did not support a

7    finding that plaintiff had a pain-free range of motion.  (ECF No. 12 at 10.)

8         The ALJ did not point to evidence in the record that plaintiff was a malingerer.  As such,

9    she was required to provide clear and convincing reasons for finding plaintiff's subjective

10   testimony less than fully credible.  *Lingenfelter*, 504 F.3d at 1036.  The "clear and convincing"

11   standard is the most demanding standard in Social Security case law.  *Garrison*, 759 F.3d at 1015.

12   Citing to the record, "the ALJ must specifically identify the testimony she or he finds not to be

13   credible and must explain what evidence undermines [it]."  *Holohan*, 246 F.3d at 1208; *Dodrill*,

14   12 F.3d at 918.  The ALJ may consider a variety of factors in weighing a claimant's credibility,

15   including inconsistencies within his testimony, reputation for truthfulness, an inadequately

16   explained failure to seek treatment, or a lack of support from the medical evidence.  20 C.F.R. §

17   404.1529(c); *Orn*, 495 F.3d at 636.  The focus, however, is upon the reviewing court.  The

18   credibility determination must be "sufficiently specific to allow a reviewing court to conclude the

19   ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the

20   claimant's testimony."  *Rollins*, 261 F.3d at 856–57 (internal quotation and alterations omitted).

21   In her decision, the ALJ articulated three main reasons for discounting plaintiff's subjective

22   complaints: (1) the objective evidence in the record did not support plaintiff's complaints; (2) the

23   extent of plaintiff's daily activities; and (3) the conservative nature of plaintiff's treatment.  (*See*

24   AR 15–21).  The court considers each in turn.

25        First, the ALJ's citation to the lack of strong support provided by the objective medical

26   evidence is a "clear and convincing" reason for discrediting plaintiff's testimony.  Plaintiff

27   contends that the ALJ failed to make a specific finding regarding plaintiff's testimony about his

28

need to lie down throughout the day and that the ALJ failed to properly categorize Dr. Zollinger's findings.  (*Id.*)

The court is not persuaded by plaintiff's contention that the ALJ failed to make specific findings relating to plaintiff's need to lie down.  In the ALJ's RFC determination, she specifically accounts for plaintiff's need to briefly alternate positions every hour.  (AR 17.)  Additionally, plaintiff points to no evidence in the record supporting such a limitation.  As such, the court finds that this determination is error free.

As to plaintiff's argument relating to the ALJ's finding that plaintiff had a pain-free range of cervical and lumbar range of motion, the court finds that plaintiff misconstrues the ALJ's decision.  Plaintiff points the court to the medical opinion of Dr. Zollinger who upon exam, stated that plaintiff had "limited cervical and lumbar pain-free range of motion."  (AR 410.)  While the ALJ did refer to Dr. Zollinger's findings in her determination, she also points to other evidence in the record that supports her determination.  As defendant points out, the ALJ mentions a report from Dr. Morgan who found plaintiff's spine had no malalignment, his spinal cord was normal, and his vertebrae had only mild changes.  (AR 18, 411.)  The ALJ also notes that Dr. Lopez found plaintiff to have normal muscle tone and bulk and normal cranial nerves.  (AR 15, 17, 487.)  The ALJ's conclusion that the objective medical evidence did not strongly support plaintiff's allegations is therefore supported by substantial evidence in the record.  Although a lack of objective medical evidence cannot be the sole basis for discounting credibility, the ALJ may properly consider it among other factors.  *Burch*, 400 F.3d at 681.

Second, plaintiff's daily activities are a clear and convincing reason to find plaintiff less credible.  The Ninth Circuit has warned ALJs to "be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day."  *Garrison*, 759 F.3d at 1016.  Still, a claimant's daily activities may support an adverse credibility finding where the activities contradict his or her testimony, as they do here.  *Orn*, 495 F.3d at 639.  Plaintiff reported and testified that he took care of his six children, performed personal care, cooked daily, cleaned the

house, shopped in stores, paid bills, drove, watched son's sporting events, and attended family gatherings.  (AR 16–17, 177-179.)  The ALJ reasonably found that plaintiff's activities were inconsistent with the impairments alleged, and thus that his allegations were not fully credible.  (AR 20–21.)

Finally, the ALJ permissibly cited the conservative nature of plaintiff's treatment.  Plaintiff challenges the ALJ's rationale on the basis that injections are not a conservative treatment and that plaintiff pursued more aggressive treatment.  (ECF No. 19 at 6.)

The Ninth Circuit has observed that "although a conservative course of treatment can undermine allegations of debilitating pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment."  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).  However, the *Carmickle* court qualified this nuance by explaining that the record in that case demonstrated the unavailability of more aggressive treatment options.  *Id.*  Otherwise, the Ninth Circuit has typically deemed conservative treatment with pain medication to be a legally sufficient reason for discounting credibility, as is a discrepancy between the frequency of treatment and the level of pain alleged.  *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); *Molina*, 674 F.3d at 1113–14; *Tommasetti*, 533 F.3d at 1039 (deeming permissible the ALJ's inference that the claimant's favorable response to conservative treatment undermined his allegations of disabling pain).  Here, the ALJ notes that plaintiff was treated with "pain medication, physical therapy, a TENS unit, and trigger point injections."  (AR 18.)  The ALJ also noted that plaintiff declined to proceed with cervical fusion surgery.  (AR 18 (citing AR 494).)  Because more aggressive treatment options were available and plaintiff continued to pursue conservative treatment, the ALJ permissibly found plaintiff to be less credible.  The determination is free of error.

**E.     The ALJ properly considered Nurse Practitioner Drew's opinion.**

Finally, plaintiff argues that the ALJ failed to give substantial evidence for dismissing Ms. Drew's opinion and failed to present the limitations in her opinion to the VE.  (ECF No. 12 at 10–11.)  Defendant argues that the ALJ reasonably gave little weight to Ms. Drew's opinion as it was

1    a brief, conclusory opinion that was inconsistent with the objective evidence in the record.  (ECF

2    No. 18 at 15–16.)

3          On April 4, 2014, Ms. Drew issued a medical source statement regarding her opinion of

4    plaintiff's limitations.  (*See* AR 628–629.)  The ALJ described Ms. Drew's findings as follows:

5    he would be unable to work due to chronic pain and depression; he would be unable to bend,

6    twist, or pull or push any significant weight; he would be unable to sit, stand, or lie down for any

7    extended period of time; and he would have difficulty with concentration due to depression.  (AR

8    20 (citing AR 628–629).)   Upon review, the ALJ accorded "little weight" to Ms. Drew's

9    assessment because she found her restrictions to be excessive in light of the objective medical

10   evidence, including the normal gait, pain-free range of cervical and lumbar range of motion, and

11   normal concentration exhibited by plaintiff.  (AR 20 (citing AR 360, 373, 410, 479, 495, 302,

12   409, 446).)

13         As discussed above, substantial evidence supported the ALJ's decision in relation to the

14   objective medical evidence.  Although the evidence could perhaps be interpreted another way, the

15   ALJ reasonably concluded that Ms. Drew's findings were less reliable given the objective

16   medical evidence.  In such a case, the court must uphold the ALJ's analysis.  *Magallanes v.*

17   *Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

18                                 **IV.    CONCLUSION**

19         Based on the foregoing, the court concludes that substantial evidence supports the ALJ's

20   determination.  The ALJ did not err in her evaluation of Dr. Barton, Ms. Drew, or in assessing

21   plaintiff's credibility.  Thus, the court recommends that plaintiff's motion for remand (ECF No.

22   12) be denied and that defendant's cross-motion to affirm (ECF No. 18) be granted.

23         1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Local Rule IB 3-2, the parties may file

24   specific written objections to this Report and Recommendation within fourteen days of receipt.

25   These objections should be entitled "Objections to Magistrate Judge's Report and

26   Recommendation" and should be accompanied by points and authorities for consideration by the

27   District Court.

28

2.      This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.      RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for remand or reversal (ECF No. 12) be **DENIED** and defendant's cross-motion to affirm (ECF No. 18) be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and close this case.

**DATED**: January 25, 2017.

_____

**UNITED STATES MAGISTRATE JUDGE**